FILED
2005 Mar-18  PM 04:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| CITIFINANCIAL CORPORATION, LLC, )<br>and AMERICAN HEALTH AND LIFE )<br>INSURANCE COMPANY, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>LILLY P. HINTON, )<br>)<br>Defendant. ) | Civil Action Number<br>7:02-cv-2803-UWC |

**MEMORANDUM OPINION
ON MOTION TO COMPEL ARBITRATION**

Having carefully considered Defendant Lilly P. Hinton's arguments against arbitration, the Court concludes that Plaintiff's Petition For Order Compelling Arbitration is due to be GRANTED. The grounds for the Court's conclusion are explained in this Opinion.

I.

In February 2002, Defendant Lilly P. Hinton and her now-deceased husband, Thomas C. Hinton, refinanced a loan with Plaintiff CitiFinancial Corporation, LLC ("CitiFinancial") at one of CitiFinancial's branch offices in Northport, Alabama. The Hintons are basically illiterate, having been exposed to an average of less than two years of schooling at a time of racially segregated and markedly inferior black schools in one of the

nation's poorest counties– Greene County, Alabama.¹   The 2002 loan was closed by CitiFinancial's Assistant Branch Manager, Johnny Parrales.  Parrales had closed other CitiFinancial loans to the Hintons in the preceding eight years.  The Hintons trusted Parrales to explain the loan terms to them.  Parrales was aware the Hintons were illiterate and depended on him for explanation of the terms of the loan.

The Hintons did not ask Parrales to read or explain the specific terms of the February 2002 loan; nor did Parrales inform the Hintons that the loan documents included arbitration clauses.  Parrales simply pointed to the places where the Hintons' signatures should be affixed.

The loan papers signed by the Hintons include arbitration provisions which require that with two exceptions,² all disputes between the borrower and lender will be settled by mandatory, binding arbitration in the county of residence of the party invoking arbitration. The loan's terms further provided that the arbitrator will decide the arbitrability and enforceability of any claims, including fraud and misrepresentation claims.  Additionally, the Hintons' loan provided that arbitration expenses in excess of $125 will be paid by CitiFinancial, and that Citiinancial will pay to the arbitrator expenses of up to eight hours of hearings.  Also, the loan documents stated that each party will pay its own attorney.  Finally, the loan's terms provided that class actions and joinder of parties are precluded.

---

¹ While Mrs. Hinton can at least sign her name, Mr. Hinton's signature was procured by having him copy onto the document to be signed the letters of his name as he looked at them on another document.

² Foreclosure actions are not subject to arbitration, and small claims (involving $15,000 or less) are likewise exempt from the arbitration provisions.

The Hintons would not have signed the loan papers had they known of the arbitration provisions. They were unwilling to give up their right to a jury trial. Rather than knowingly sign loan papers which required arbitration, they would have foregone the consumer loan and obtained the needed money from their son.

The Hintons paid a $495.26 credit life insurance premium as a part of the $6,845.35 loan for the Hintons.

Within six weeks of the execution of the CitiFinancial loan, Thomas Hinton died. Despite the existence of the credit life insurance and a demand for payment by Lily Hinton, CitiFinancial failed to pay the full amount of the life insurance claim.

In August 2002, the widow Hinton commenced an action against CitiFinancial, American Health and Life Insurance Company ("American Health"), and Johnny Parrales in the Circuit Court of Greene County, Alabama. That lawsuit ("the state court action") alleges breach of contract, fraud, bad faith, breach of fiduciary duties, civil conspiracy, and negligence.

CitiFinancial and American Health then commenced this action seeking to compel arbitration of the claims asserted in the state court action. This Court's jurisdiction is provided by Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4.[3]

II.

Under the FAA, a written arbitration provision is "valid, irrevocable, and enforceable,

---

[3] The Court is convinced that 1) the contract at issue contains arbitration provisions, and 2) the loan implicated interstate commerce, inasmuch as the Hintons are Alabamians and CitiFinancial is a foreign corporation.

save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2000).  The defense of unconscionability may be utilized to invalidate an arbitration clause without running afoul of the FAA.  *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996).

Under Alabama law, " '[a]n unconscionable . . . contractual provision is defined as a . . . provision "such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." ' "  *So. United Fire Ins. Co. v. Howard*, 775 So. 2d 156, 163 (Ala. 2000).  There are two prongs of the unconscionability defense: 1) grossly favorable terms for a party  2) with overwhelming bargaining power. *Am. Gen. Fin., Inc. v. Branch,* 793 So. 2d 738, 748 (Ala. 2000) (*quoting Lloyd v. Serv. Corp. of Ala.*, 453 So. 2d 404, 408 (Ala. 1992) and *Hume v. United States*, 132 U.S. 406, 410 (1889)).

Indicia of disproportionality of contract terms include without limitation   1) the breadth of the arbitration clause, 2) the authority *vel non* of the arbitrator to determine threshold issues of arbitrability,  3) the reservation of certain powers or prerogatives at the expense of the other party, and 4) a failure to explain or mention the arbitration terms to an illiterate borrower who has requested an explanation of the terms.  *Anderson v. Ashby,* 873 So. 2d 168, 175 (Ala. 2003) ("*Ashby*").

The touchstone of the second element of unconscionability–*i.e.*, overwhelming bargaining power, is "whether the consumer has the ability to obtain the product made the basis of [the] action without signing an arbitration clause."  *Branch,* 793 So. 2d at 750*;*

*Green Tree Fin. Corp. v. Wampler,* 749 So. 2d 409, 415 (Ala. 1999).

### III.

#### A. The First Prong of Unconscionability

The breadth of the CitiFinancial arbitration clause greatly favors CitiFinancial. With two exceptions, it covers any claim, controversy, dispute, or disagreement between the Hintons, CitiFinancial, and American Health. The two exceptions are weighed in CitiFinancial's favor. The first indicia of unconscionability is present.[4]

Moreover, the second indicator of grossly favorable terms for CitiFinancial is present. As in *Ashby*, the arbitrator is vested with the authority to effectively determine the breadth and range of their powers. The arbitrator is the sole arbiter of threshold issues of arbitrability, the scope of the arbitration provisions, as well as any defenses to enforcement of the arbitration provisions. No special or extraordinary powers are conferred on the arbitrator by the loan documents. The second indicia of unconscionability is present.

As stated earlier, the claims and disputes exempted from arbitration definitely tilt in CitiFinancial's favor. First, foreclosure proceedings are exempted from arbitration. Only CitiFinancial benefits from this exemption. This is one of the strongest weapons in its legal arsenal; and CitiFinancial has reserved the right to have any dispute concerning this lethal weapon to be settled by a court and perhaps a jury, not by an arbitrator. Likewise, the exemption of small claims from arbitration works disproportionately to the benefit of

---

[4] But the breadth of the arbitration clause, standing alone, is insufficient to establish unconscionability. *See Leeman v. Cook's Pest Control, Inc.,* No. 1022063, 2004 WL 2757414 (Ala. 2004).

CitiFinancial. With a liability cap of $15,000, it is willing to risk trial by jury of the claims of impecunious borrowers. More than any other factor, these two exclusions from the arbitration process reflect the one-sidedness of the arbitration provisions.

While Parrales, CitiFinancial's Branch Manager, did not alert the Hintons to the existence of the arbitration provisions, they did not expressly request him to explain the terms of the loan papers. Nonetheless, the failure of Parrales to mention the arbitration provisions to the Hintons has significant probative value.[5]

The Court concludes that Defendant Hinton has satisfied the first prong of the unconscionability defense.

### B. The Second Prong of Unconscionability

At best, it is unclear from the evidence whether the Hintons could have obtained a loan from a consumer finance company in the Northport-Tuscaloosa area without agreeing to arbitration.[6] If the Court reached that issue, it would probably conclude that the evidence does not sufficiently establish that CitiFinancial had overwhelming bargaining power in the Northport-Tuscaloosa area.

---

[5] But the probative value of this significant omission is considerably less than the *Ashby* scenario in which the illiterate borrowers specifically requested the lender's representative to explain the terms of the loan documents.

[6] According to Defendant Hinton's evidence, there were five consumer finance companies listed in the Tuscaloosa Yellow Pages in 2003: American Freedom Mortgage, American General Finance, Associates Financial Services, First Franklin Financial, and Tucker Finance Company, Inc. The loan documents of three of these (American General, Associates Financial, and First Franklin) reflect arbitration clauses. (R. 16, Def.'s Supplement to Br. in Opp'n to Pl.'s Pet. for Order Compelling Arbitration at Exs. A, C.) In the absence of other evidence, the Court assumes that arbitration-free loans may be obtained at the other three finance companies.

But this inquiry is foreclosed by Defendant Hinton's declaration that if she had known of the arbitration provisions in the CitiFinancial documents, she would not have sought out another finance company for an arbitration-free loan. Instead, she would have simply obtained the needed funds from her son.

Given this declaration, The Court concludes that Defendant Hinton has not carried her burden of proof on the second prong of her unconscionability defense.

IV.

By separate order, the Petition For Order Compelling Arbitration will be granted; and the case will be dismissed without prejudice to the right of any party to reinstate the case upon exhaustion of the arbitration proceedings.

Done this 18th day of March, 2005.

_____
U.W. Clemon
Chief United States District Judge